IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT ROCK ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal No.  16-40075 |
| | ) |
| MICHAEL R. SHAFFIER, JR., | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S SENTENCING MEMORANDUM

Comes now, the United States of America, by and through the undersigned Assistant United States Attorney, and hereby files its Sentencing Memorandum, in response to the defendant's arguments in his Sentencing Memorandum, ECF No. 29, that the child pornography guidelines produce an unreasonable range of 151–188 months (or 63–78% of the maximum sentence he faces for Count 1).

On June 20, 2017, the defendant filed a Sentencing Memorandum asking the Court to vary downward to a sentence of 60–84 months, in lieu of the guideline range term of 151–188 months—a variance of about 60%.  Apart from the erroneous claim that the guidelines impermissibly double count the defendant's distribution conduct, the defendant does not dispute that a proper application of the Sentencing Guidelines results in a final offense level of 34 with a Criminal History Category of I.  Rather, he argues his term of imprisonment should be shortened by more than half because of 1) alleged systemic flaws in the child pornography Guidelines; and 2) a claim that the defendant is at low risk to recidivate.  ECF No. 29 at 7, 12.  The latter argument rests on a psychological evaluation that should be given very little weight because of

1

its near total reliance on the defendant's uncorroborated self-reporting. The defendant's first argument is likewise unavailing, as described below.

> **A. The child pornography guidelines were properly directed by Congress to punish offenders, and the history of the guidelines reveals that many SOCs apply routinely *by design*.**

The child pornography guidelines "reflect directions from Congress to punish these crimes more harshly." *United States v. Price*, 775 F.3d 828, 841 (7th Cir. 2014). Congress clearly has the authority to direct the Sentencing Commission to implement guidelines for this purpose. U.S. CONST. art. I, § 8; *See Mistretta v. United States*, 488 U.S. 361, 363 (1989) ("Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control.").

In order to implement Congress's directives, the Sentencing Commission chose to "set the base offense level below the mandatory minimum and rely on specific offense characteristics and Chapter Three adjustments to reach the statutory mandatory minimum [for trafficking and receipt of child pornography]." Sentencing Commission, *History of the Child Pornography Guidelines* (2009), at 45.[1] According to the Commission,

> After engaging in extensive analysis of its data, including a review of typical trafficking and receipt offenders, offense characteristics, and rates of below guideline sentences for these offenses, the Commission adopted the third, most lenient option of those typically used by the Commission, and selected base offense level 18 for possession offenders and base offense level 22 for trafficking and distribution offenders.
> The Commission's analysis revealed that a majority of offenders sentenced under § 2G2.2 were subject to specific offense characteristics that increased their offense level. Specifically, the overwhelming majority of these offenders received a 2-level enhancement for use of a computer (89.4%) and a 2-level enhancement for material involving a child under 12 (91.4%).

---

[1] http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf

*Id.* at 46. Since the base offense level was purposefully set lower to account for the frequent application of certain SOCs, *see id.* at 44–47, the Court should augment the base offense level if it is inclined to ignore, for example, the use of the computer SOC.

Similarly, when § 2G2.2 and the child pornography guidelines were amended in 2011, the Sentencing Commission "determined that a base offense level of level 22 is appropriate for trafficking offenses because, when combined with several specific offense characteristics which are expected to apply in almost every case (e.g., use of a computer, material involving children under 12 years of age, number of images), the mandatory minimum of 60 months' imprisonment will be reached or exceeded in almost every case by the Chapter Two calculations." U.S.S.G., App. C, Vol. III, Amendment 664 (Nov. 1, 2011).

The Sentencing Commission knew and understood that many of the SOCs would apply in every case. It is exactly what the Sentencing Commission intended, and it provides no basis to argue the enhancements are unreasonable.

> **B. This Court should decline to ignore the guidelines based on *Dorvee*'s policy concerns, particularly in the blanket fashion that the case suggests.**

The Seventh Circuit has expressed its frustration with defendants shifting the purpose of a sentencing hearing from the defendant's conduct to the history of the sentencing guidelines: "We do not think a judge is required to consider . . . an argument that a guideline is unworthy of application in any case because it was promulgated without adequate deliberation. He should not have to delve into the history of a guideline so that he can satisfy himself that the process that produced it was adequate to produce a good guideline." *United States v. Aguilar-Huerta*, 576 F.3d 365, 367 (7th Cir. 2009); *Cf. United States v. Martin*, 718 F.3d 684, 688 (7th Cir. 2013) ("Martin did not argue that the child-pornography guidelines should *never* be applied."

3

(emphasis in original)).  Similarly, in this case, the Court should focus on the defendant's offense conduct rather than the history of the guidelines, taking into account, however, that Congress intended to punish child pornography offenders more harshly, as reflected by the guideline range.

The defendant quotes extensively from the Second Circuit's opinion in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), to argue that § 2G2.2 invariably leads to unreasonable guideline ranges and arbitrary, unwarranted, and unreasonable sentencing disparities.  ECF No. 29 at 4, 5–8.  The Court is certainly free to consider the Second Circuit's concerns.  *See United States v. Price*, 775 F.3d 828, 841 (7th Cir. 2014) ("We have said before that the concerns expressed in *Dorvee* 'can certainly be taken into account by district judges when exercising their sentencing discretion under the now advisory guidelines.'" (quoting *United States v. Mantanes*, 632 F.3d 372, 377 (7th Cir. 2011))).  But the Seventh Circuit encourages courts to sentence within the guidelines range to avoid disparity between similarly situated defendants appearing before different courts.  "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly.  That was the main goal of the Sentencing Reform Act.  The more out of range sentences that judges impose, the more disparity there will be. " *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008) (citing *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006)).

Furthermore, the Seventh Circuit has recognized the goal of eliminating the market for child pornography materials by imposing lengthy sentences on those who fuel the market:

> The overarching goal of the sentencing guideline enhancements is to weaken the market for child pornography that keeps the producers and distributors of this filth in business.  Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these

> exploited children. The avenue Congress has chosen to weaken the child
> pornography industry is to punish those who traffic in it.

*United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) (internal citations omitted).

Policy arguments attacking the rationale behind the child pornography guidelines distract the court from the primary focus of the sentencing hearing: the criminal conduct of the defendant, his effect on the victims, and the impact his crimes have had on the community and public. To quote another Seventh Circuit case:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). The defendant's request for the mandatory minimum sentence on Count 1 neither reflects the seriousness of this crime nor reflects its impact to the children who were raped for the material possessed and distributed by the defendant. The victim impact statements to be submitted in this case further illustrate the immense harm caused by the defendant's crimes.

### C. Applying the two-level SOC for distribution is not impermissible double counting; rather, all of the SOCs applied in the PSR are appropriate.

The defendant argues that his guideline range is the result of impermissible double counting, citing to *United States v. Tenuto*, 593 F.3d 695, 697 (7th Cir. 2010). The double counting analysis in that decision, while not specifically mentioned, was called into serious doubt (if not abrogated) by *United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012). *Vizcarra* held that the line of cases on which *Tenuto* relied is "no longer reasonable," and held, "there is

5

no background rule against double counting in the guidelines. To the contrary, under the general application rules announced and explained in § 1B1.1, the same conduct may determine the base offense level and also trigger cumulative sentencing enhancements and adjustments unless the text of the applicable guideline explicitly states otherwise," 668 F.3d at 524–25. A subsequent decision, *United States v. McLaughlin*, 760 F.3d 699, 704 (7th Cir. 2014), made clear that *Vizcarra*'s holding applies to the child pornography guidelines.

Additionally, the base offense level for § 2G2.2 does not fully account for the degree of harm caused by distribution of child pornography; base offense level 22 also applies to other offenses, such as transportation and receipt. Unless the enhancement is applied, therefore, a defendant is not punished for distributing child pornography. Moreover, the defendant should be punished for his distribution conduct, despite his claims that he was "primarily" a possessor. His claim rests in part on a misleading description of his offense conduct. The files the defendant was convicted of distributing were not passively "ma[d]e available" via a peer-to-peer program, ECF No. 29 at 2–3; they were shared, as charged in the indictment, via Yahoo! Messenger, requiring an affirmative decision to upload files to send them to another user. Among the files the defendant shared on June 22, 2015, were an image of an adult male's penis inserted into the anus of a child who appears to be under the age of five, an image of an adult male's penis inserted into a toddler's mouth, and an image of a penis in the mouth of a prepubescent child who is bound. PSR ¶10. Thus, the specific offense characteristics applied in ¶¶29–32, for depiction of children under 12, use of a computer, distribution, and depiction of sadistic or masochistic conduct and/or toddlers or infants, are all warranted and appropriate based solely on Count 1. Furthermore, the defendant possessed 1,514 images and 222 videos, for a total of 18,164 images; if anything, the enhancement for possession of over 600 images undervalues his

vast collection. PSR ¶33. Thirty of the videos depict infants or toddlers, eight depict bondage, and three depict bestiality. PSR ¶20.

**D. This Court should give Dr. Witherspoon's evaluation very little or no weight.**

On June 15, 2017, the defendant filed as ECF No. 28 the report of a psychological evaluation conducted by Dr. Kirk Witherspoon. Dr. Witherspoon indicates in the report that the only documents he reviewed were the defendant's indictment and complaint. All of the tests and inventories he employed in evaluating the defendant rely on the defendant's self-report, either via narrative or answers to questions. Dr. Witherspoon's evaluation therefore rests almost entirely on the defendant's uncorroborated statements—thought not on any of the statements the defendant previously made to law enforcement. Common sense alone dictates that Dr. Witherspoon's findings should thus be accorded very little weight; his methodology also appears to run contrary to the Practice Guidelines promulgated by the Association for the Treatment of Sexual Abusers, particularly Guideline 5.01. *See* Association for the Treatment of Sexual Abusers, ATSA Adult Practice Guidelines 2014, available at http://www.atsa.com/ATSAmemberDocs/2014_ATSA_Practice_Guidelines.pdf.

**E. The parties and victims have reached an agreement as to restitution.**

The defendant indicated through counsel on June 22, 2016, that he will agree to pay $8,000 in restitution to each of the two requesting victims,[2] with interest waived. This figure is acceptable to the victims and to the government, and is close to the amount that was found

---

[2] Originally, victims from three series submitted restitution requests; the victims from one series subsequently withdrew their requests. Victim "Cindy" from the "Cindy" series originally requested the agreed amount of $8,000. Victim "Emily" from the "Tightsngold" series originally requested $25,000.

substantively reasonable for the victim of a possession count in *United States v. Sainz*, 827 F.3d 602 (7th Cir. 2016).

Wherefore, the government asks that the Court reject the defendant's request for a sentence at or near the statutory minimum, and instead sentence him to a term of imprisonment within his guideline range of 151–188 months.

Respectfully submitted,
PATRICK D. HANSEN
Acting United States Attorney

By:    */s/ Meredith DeCarlo*
Meredith DeCarlo
Assistant United States Attorney
1830 Second Avenue, Suite 250
Rock Island, Illinois 61201
Telephone: (309) 793-5884
Facsimile: (309) 793-5895

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2017, I electronically filed the foregoing materials with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participant(s) in this case.

*/s/ Meredith DeCarlo*
Meredith DeCarlo
Assistant United States Attorney